IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
RUTH ISOM TUCKER,                      )
                                       )
                 Plaintiff,            )
                                       )
        v.                             )    1:18CV481
                                       )
ANDREW M. SAUL,                        )
Commissioner of Social Security,[1]    )
                                       )
                 Defendant.            )
```

**<u>MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff, Ruth Isom Tucker, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; <u>see also</u> Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 13 (Defendant's Memorandum); Docket Entry 14 (Plaintiff's Reply)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging a disability onset date of June 1, 2012. (Tr. 214-19, 220-27.) Upon denial of those applications initially (Tr. 63-94, 129-39) and on reconsideration (Tr. 95-126, 143-60), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 161-63). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 33-62.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 7-23.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 211-13), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] met the insured status requirements of the [] Act through December 31, 2017.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since June 1, 2012, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: aortic occlusion status post bypass, degenerative disk disease, chronic obstructive pulmonary disease, and depressive disorder.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .

2

5. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except the claimant would be limited to sitting, standing, and walking each for six hours out of an eight-hour workday, but for no more than one hour at [a] time for sitting, standing, or walking; frequent balancing, stooping, kneeling, crouching, and crawling; frequent climbing ramps and stairs; occasional climbing ladders, ropes, poles, and scaffolds; avoiding concentrated exposure to fumes, dusts, gases, and pulmonary irritants; avoiding concentrated exposure to hazards such as unprotected heights and moving machine parts; and concentrating on task for two hours at a time before changing tasks or being redirected.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from June 1, 2012, through the date of this decision.

(Tr. 12-22 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Even given those limitations, the Court should remand this case for further administrative proceedings.

## A. **Standard of Review**

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry his "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process,
(continued...)

**B. Assignments of Error**

According to Plaintiff, the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ err[ed] when he fail[ed] to incorporate [into the RFC] non-exertional limitations on the ability to stay on task where he first f[ou]nd[] that [Plaintiff] was moderately impaired in the maintenance of concentration, persistence, or pace ('CPP')" (Docket Entry 11 at 5 (citing Tr. 13); see also Docket Entry 14 at 1-5); and

2) "[t]he ALJ err[ed] by failing to incorporate all the limitations credited into the hypothetical question put to the [VE] . . . [and] also err[ed] by failing to provide adequate reasons for rejecting the contrary opinions of the non-examining [s]tate agency medical consultants" (id. at 14; see also Docket Entry 14 at 2-3).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 3-13.)

**1. CPP**

Plaintiff's first assignment of error asserts that "[t]he ALJ err[ed] when he fail[ed] to incorporate [into the RFC] non-exertional limitations on the ability to stay on task where he first f[ou]nd[] that [Plaintiff] was moderately impaired in the maintenance of [CPP]." (Docket Entry 11 at 5 (citing Tr. 13); see

---

[5] (...continued)
review does not proceed to the next step.").

also Docket Entry 14 at 1-5.) In support of that position, Plaintiff's Brief observes that, "[i]n Mascio[ v. Colvin, 780 F.3d 632 (4th Cir. 2015)], the Fourth Circuit held that an ALJ does not account for a claimant's limitations in CPP by restricting the RFC or the hypothetical question to the [VE] to simple, routine, or repetitive tasks ['SRRTs'], . . . [because] 'the ability to perform simple tasks differs from the ability to stay on task[ and o]nly the latter limitation would account for a claimant's limitation in [CPP].'" (Docket Entry 11 at 6 (quoting Mascio, 780 F.3d at 638).) According to Plaintiff, the RFC's reference to "'concentrating on task for two hours at a time before changing tasks or being redirected'" (id. (quoting Tr. 14)) fails to "'adequately account for a moderate limitation in the ability to stay on task, absent further explanation,' because a limitation to working in [two]-hour increments 'does not account for any breaks in addition to those encompassed by a normal workday'" (id. at 7 (quoting Ludlow v. Commissioner, No. SAG-15-3044, 2016 WL 4466790, at *2 (D. Md. Aug. 23, 2016) (unpublished) (observing that, pursuant to SSA policy, "a normal workday includes a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals")); see also id. at 7-8 (quoting Capps v. Berryhill, No. CBD-17-2438, 2018 WL 4616018, at *5 (D. Md. Sept. 26, 2018) (unpublished) (holding that ALJs "must consider that the normal [eight]-hour workday already includes breaks approximately every two [] hours and provide

9

further explanation as to how [a] restriction [to maintain CPP for two-hour intervals] adequately accounts for a moderate limitation in the ability to stay on task or else it does not meet the Mascio requirements" (internal quotation marks omitted)))). Plaintiff posits that the ALJ's decision "does not reveal any explanation for the missing limitation on the ability to work on-task for a full work day, or a finding that the moderate limitation in CPP does not affect [Plaintiff's] ability to work." (Docket Entry 11 at 11.)

The United States Court of Appeals for the Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16,

10

2015) (unpublished) (rejecting argument under Mascio where ALJ "gave abundant explanation" that unskilled work adequately accounted for claimant's moderate limitation in CPP, by highlighting the claimant's daily activities and treating physicians' opinions).

In this case, the ALJ's decision provides an insufficient explanation as to why its reference to "concentrating on task for two hours at a time before changing tasks or being redirected" (Tr. 14) sufficiently accounted for Plaintiff's moderate deficit in CPP. At step three of the SEP, the ALJ provided the following rationale for finding Plaintiff moderately limited in CPP:

> With regard to [CPP], the evidence of record showed that [Plaintiff] was diagnosed with depressive disorder [(Tr. 405-61)]. The records showed that [Plaintiff's] subjective complaints from her depressive disorder included, but was [sic] not limited to, poor focus, poor concentration, forgetfulness, difficulty completing tasks, racing thoughts, fatigue, and hopelessness and helplessness [(Tr. 328)]. The [ALJ] finds that [Plaintiff's] symptoms were consistent with a diagnosis of depressive disorder.

(Tr. 14.) As Plaintiff points out (see Docket Entry 11 at 11 (noting that ALJ's step three CPP finding contained "no qualification or hedging about the significance of the moderate limitations in CPP")), the ALJ's explanation confirms that Plaintiff's reported mental symptoms matched her diagnosis of depressive disorder, but provides no basis (beyond the subjective nature of Plaintiff's reports, which the ALJ found "not entirely

11

consistent" with the record (Tr. 16)) for his finding of moderate (as opposed to none, mild, marked, or extreme) limitation in CPP.

Additionally, Plaintiff properly has noted that the RFC's reference to "'concentrating on task for two hours at a time before changing tasks or being redirected'" (Docket Entry 11 at 6 (quoting Tr. 14)) fails to "'adequately account for a moderate limitation in the ability to stay on task, absent further explanation,' because a limitation to working in [two]-hour increments 'does not account for any breaks in addition to those encompassed by a normal workday'" (id. at 7 (quoting Ludlow, 2016 WL 4466790, at *2)). Although, on its face, the ALJ's reference to "concentrating on task for two hours at a time" (Tr. 14) appears to address Plaintiff's ability to stay on task, a recent discussion by this Court highlights why Plaintiff's RFC provides no pertinent, mental limitation at all:

> The ALJ's RFC explicitly limits [the p]laintiff's ability to maintain CPP and stay on task to two-hour periods of time. [The p]laintiff contends that such a finding amounts to no restriction because it effectively treats [the p]laintiff as if she could stay on task for an eight-hour workday because customary work breaks occur approximately every two hours. However, <u>the ALJ did not find that [the p]laintiff maintained the ability to stay on task for two-hour periods to perform all manner of work; rather, the ALJ found that [the p]laintiff could stay on task for two-hour blocks of time only when performing SRRTs in a low stress work setting, which, in addition to the nature of the work being performed, [wa]s further defined to mean no production-pace or quota-based work, rather a goal-oriented job primarily dealing with things as opposed to people, with no more than occasional work with the public as a component of the job, and no more than occasional changes in the work setting</u>. Thus,

12

> the ALJ clearly did include a limitation in the RFC to account for the state agency psychological consultants' . . . opinion regarding [the p]laintiff's ability to maintain concentration.

Scott v. Berryhill, No. 1:16CV48, 2017 WL 500000, at *5 (M.D.N.C. Feb. 7, 2017) (unpublished) (emphasis added) (internal citations, quotation marks, and brackets omitted), recommendation adopted, slip op. (M.D.N.C. Mar. 1, 2017) (Eagles, J.).

In contrast to Scott, the ALJ here did not include any mental restriction that would address Plaintiff's moderate limitation in CPP. (See Tr. 14.) Because, under SSA policy, "'customary [work] breaks . . . occur approximately every two hours,'" Hawley v. Astrue, No. 1:09CV246, 2012 WL 1268475, at *7 (M.D.N.C. Apr. 16, 2012) (unpublished) (quoting Perkins v. Astrue, No. EDCV-08-1383-OP, 2010 WL 375117, at *6-7 (C.D. Cal. Jan. 25, 2010) (unpublished) (in turn relying on Social Security Ruling 96-6p, Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence, 1996 WL 374180 (July 2, 1996))), recommendation adopted, 2012 WL 3584340 (M.D.N.C. Aug. 20, 2012) (Beaty, C.J.) (unpublished), the ALJ's reference in the RFC to "concentrating on task for two hours at a time" (Tr. 14) did not provide any limitation to account for

13

Plaintiff's moderate deficit in CPP, but instead just left in place the standard work schedule (without explaining why Plaintiff could meet the demands of such a schedule despite her moderate deficit in CPP).

Further compounding the ALJ's failure to either include a restriction accommodating Plaintiff's moderate deficit in CPP in the RFC or a sufficient explanation for the absence of such a restriction, the ALJ's discussion and weighing of the opinion evidence as it relates to Plaintiff's ability to function mentally does not provide a "logical bridge," Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000), between the ALJ's finding of moderate CPP deficits and the RFC. In that regard, Plaintiff notes that the state agency psychological consultant at the initial level of review limited Plaintiff to "'[SRRTs] in relatively undemanding work settings that do not require intensive interpersonal relating and that require no more than two hours at the time of maintenance of attention and concentration'" (Docket Entry 11 at 8 (quoting Tr. 75, 90) (emphasis added)), and the consultant at the reconsideration stage found that Plaintiff could "sustain attention and concentration for at least [two] hours at a time to perform a variety of tasks at low production pace" (id. (quoting Tr. 106-07, 121-22) (emphasis added)). However, "in spite of [the ALJ's] allocation of 'partial weight' to the[ consultants'] assessments" (id. (quoting Tr. 20)), the ALJ neither incorporated into the RFC

14

any of the consultants' above-emphasized restrictions (see Tr. 14) nor sufficiently explained their absence.

To the contrary, the ALJ's decision simply states:

> The [ALJ] gives partial weight to the assessments of [the state agency psychological consultants] and finds that their assessments were consistent with the evidence of record, which showed that [Plaintiff] was diagnosed with depressive disorder . . . . <u>Greater weight was not given to their assessments, however, because their assessments were not sufficiently functional or diagnostic in nature</u>.

(Tr. 20 (emphasis added).) The ALJ's criticism of the consultants' opinions as "not sufficiently functional" (id.) misses the mark, as the consultants assessed Plaintiff's <u>entire</u> mental RFC, completing limitation ratings for <u>every</u> mental functional ability considered relevant by the SSA, as well as providing narrative explanations of their findings. (See Tr. 73-75, 88-90, 105-07, 120-22; see also Docket Entry 11 at 10 ("It is curious that the decision should criticize psychological consultants, whose assessments are noted on functional categories on the Commissioner's forms, for findings that are not sufficiently functional or diagnostic in nature. Other than their use as a self-justifying phrase, these sentences are not explanations but conclusory statements." (internal citations, quotation marks, and footnote omitted)).)

Plaintiff correctly maintains that the ALJ's <u>Mascio</u> error qualifies as prejudicial, because the ALJ's incorporation of any mental restrictions (including those offered by the state agency psychological consultants) into the RFC to account for Plaintiff's

15

moderate deficit in CPP likely "would have significantly narrowed the occupations available under the constraints of the hypothetical question."  (Docket Entry 11 at 9 (citing Social Security Ruling 85-15p, Titles II and XVI: Capability to Do Other Work — The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, at *5 (1985) (noting that mental impairments often reduce occupational base)).)  Moreover, the Court cannot determine, on the current record, whether additional mental restrictions, such as a non-production or low-stress limitation, would impact the medium, unskilled jobs cited by the VE (see Tr. 59) and relied upon at step five of the SEP by the ALJ (see Tr. 21-22).

In sum, Plaintiff's first issue on review entitles her to remand.

## 2. State Agency Consultants' Opinion Evidence

Lastly, Plaintiff argues that "[t]he ALJ [] err[ed] by failing to provide adequate reasons for rejecting the [] opinions of the non-examining [s]tate agency medical [and psychological] consultants."  (Docket Entry 11 at 14; see also Docket Entry 14 at 2-3.)  In particular, Plaintiff contends that the ALJ failed to include in the RFC 1) the initial-level state agency psychological consultant's opinion that Plaintiff's depressive disorder limited her to SRRTs (id. at 15 (citing Tr. 73-75)); and 2) both state agency medical consultants' opinions that Plaintiff remained able

16

to perform only <u>occasional</u> climbing, balancing, stooping, kneeling, crouching, and crawling (<u>id.</u> (citing Tr. 72, 104-05, 119-20)). Plaintiff's contentions have merit.

As discussed above, the ALJ failed to provide a sufficient explanation for according the state agency psychological consultants' opinions partial weight, and did not adequately explain why he credited their opinions that Plaintiff remained able to concentrate for two hours at a time with additional restrictions but did not adopt those additional restrictions. Moreover, the ALJ gave "partial weight" to the state agency medical consultants' opinions but declined to accord them "greater weight" because the consultants "did not adequately consider [Plaintiff's] subjective complaints or the combined effect of impairments." (Tr. 20.) That rationale implies that the ALJ found that Plaintiff's impairments caused <u>greater</u> limitations than found by the state agency medical consultants (which the ALJ confirmed by restricting Plaintiff to only one hour of sitting, standing, or walking at a time (<u>see</u> Tr. 14)), but certainly does not explain why the ALJ adopted a <u>lesser</u> degree of restriction with regard to Plaintiff's ability to climb, balance, stoop, kneel, crouch, and crawl (<u>compare</u> Tr. 14 (ALJ's RFC permitting frequent postural movements), <u>with</u> Tr. 72, 87, 104-05, 119-20 (state agency medical consultants' RFC permitting only occasional postural movements)). Again, because the Court cannot speculate regarding the impact of additional non-exertional

17

restrictions (if any) on the available jobs, the Court should remand this matter for further development.

Plaintiff's second issue on review thus also entitles her to remand.

### III. CONCLUSION

Plaintiff has established errors warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings, to include 1) reassessment of the RFC in light of Plaintiff's moderate deficit in CPP in compliance with Mascio, and 2) reconsideration and reweighing of the opinions of the state agency medical and psychological consultants in accordance with 20 C.F.R. §§ 404.1527 and 416.927. As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) should be granted in part, i.e., to the extent it requests remand, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) should be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 6, 2019